

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

<u>**LETTER OPINION**</u>

May 13, 2010


Colin M. Page
2001 Route 46
Suite 310
Parsippany, New Jersey 07054

John R. Middleton
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, New Jersey 07068
    (*Attorneys for Plaintiff*)

Jaime N. Morris
Morgan, Lewis & Bockius, LLP
502 Carnegie Center
Princeton, New Jersey 08540
    (*Attorney for Defendants*)

    RE:   <u>**Wargotz v. NetJets, Inc., et al.**</u>
           <u>**Civ. No. 09-4789 (WJM)**</u>

Dear Counsel:

    Plaintiff Michael Wargotz brings the instant action against Defendants NetJets, Inc., NJ Executive Services, Inc., and Administrative Committee of NetJets, Inc. alleging a violation of his statutory right to certain documentation under the Employee Retirement Income Security Act ("ERISA"). Specifically, Wargotz contends that Defendants refused to give him information pertaining to a voluntary severance program, contrary to Section 502(c)(1)(B) of ERISA. *See* 29 U.S.C. § 1132(c)(1)(B). Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and Rule

12(b)(3) for improper venue.  After the filing of the motion to dismiss, Plaintiff Wargotz sought leave from the Court to file an amended complaint.  For the reasons that follow, Plaintiff's motion to amend is **GRANTED**, as is Defendants' motion to dismiss.

I.   BACKGROUND[1]

Plaintiff Wargotz, a New York resident, was employed by Defendants NetJets, Inc. and NJ Executive Services, Inc.[2] (collectively referred to herein as "NetJets") until his involuntary termination in August 2009. At that time, NetJets was headquartered in Woodbridge, New Jersey.

According to the Complaint, in April 2009, Plaintiff Wargotz learned from the Chief Executive Officer of NetJets that the company planned to offer a voluntary resignation and severance program.  During that same meeting, this individual also purportedly told Wargotz that he did not qualify for the so-called "Early Out" program.  On August 8, 2009, two days after he was informed that his position was being eliminated, Wargotz received a proposed Separation and Release Agreement.  In response to the proposed agreement, Wargotz's lawyer sent a request in writing for copies of  (1) NetJets' "severance plans and policies" and (2) "summary plan description, all participant communications, and Board of Directors Minutes and Exhibits relating to recent voluntary staff reduction program (and each other similar reduction, RIF, layoff program occurring during the past 12 months)." (Compl. ¶ 25).

NetJets' in-house legal counsel responded to Wargotz's request by denying the

---

[1] The allegations contained in this "Background" section are drawn from the amended complaint filed by Plaintiff Wargotz before this Court. *See* Docket No. 9.  The Court notes that the issues pertinent to this motion to dismiss were present in both the initial complaint and the amended complaint and have been briefed fully by both parties. *See* Docket Nos. 9, 12, 13.  Since both parties have had the opportunity to be heard on dismissal of the amended complaint, the Court finds that neither side will be prejudiced by the Court's consideration of the amended complaint for the purposes of this motion to dismiss.  As such, Plaintiff's motion to amend is granted, and the complaint referred to by the Court in this Letter Opinion will be the amended complaint.

[2] In the moving brief, Defendants state that Wargotz was employed by Defendant NJ Executive Services, Inc., which they identify as an indirect subsidiary of NetJets, Inc. (Defs.' Moving Br. 1.)  Wargotz does not specify in his Complaint whether he was employed by NetJets, Inc. or NJ Executive Services; instead, he makes allegations as to both.  Thus, for the sake of this motion, the Court will follow Wargotz's pleading and refer to the defendants in this action collectively where appropriate.

existence of the voluntary severance plan. After this, Plaintiff's attorney informed NetJets that Wargotz had a statutory right to certain documents under ERISA. When NetJets failed to send Wargotz the requested documents within the requisite 30-day period under ERISA Section 502(c), Wargotz filed the instant suit. Through this action, Wargotz seeks: (1) the requested documents; (2) statutory damages ($110 per day commencing on September 10, 2009 and ending when documents supplied); and (3) attorney's fees.

After this action was filed, NetJets reversed course and provided a copy of the "NetJets Early Out Incentive Plan and Summary Plan Description" ("SPD") to Wargotz on September 30, 2009. The SPD identifies Defendant Administrative Committee of NetJets, Inc. as the "plan administrator." (Defs.' Moving Br. Ex. 1 at 10-11.) Further, the SPD states that the Defendant Administrative Committee is located in Columbus, Ohio. (*Id.* at 16.)

## II.   DISCUSSION

Plaintiff Wargotz's one-count complaint asserts a violation of ERISA Section 502(c)(1)(B). In its motion to dismiss, Defendants argue for dismissal under Rule 12(b)(6), alleging that Plaintiff has failed to set forth these requisite elements of a Section 502(c)(1)(B) action.

### A.   Federal Rule of Civil Procedure 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true,[3] the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570,

---

[3] This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

      B.     Complaint Fails to State a Section 502(c)(1)(B) Action

Defendants argue that Plaintiff fails to state a claim under 29 U.S.C. § 1132(c)(1)(B). The provision, in conjunction with 29 U.S.C. § 1132 (a)(1)(A), permits an administrator to be held personally liable to a participant or beneficiary for noncompliance with the participant's or beneficiary's request for covered information. § 1132(c)(1)(B). To avoid liability, the administrator must furnish the requested information within thirty days of the request. *Id.*

To state a claim for relief under Section 502(c)(1)(B), a plaintiff must allege: (1) that he is a plan participant or beneficiary; (2) that he has made a written request to a plan administrator for information that falls within the purview of ERISA's disclosure requirements; and (3) that the plan administrator failed to provide the requested documents within thirty days of the written request. *See* 29 U.S.C. § 1132(c)(1)(B). Plaintiff has failed to plead the first two elements here.

      1.     *"Plan Participant"*

Defendants contend that Plaintiff has failed to allege that he is a "participant or beneficiary" of the at-issue plan. Whether Plaintiff falls within the scope of these terms is a threshold requirement to suit. *See* 29 U.S.C. § 1132(a)(1)(A). Since Plaintiff fails to allege that he is a beneficiary, the main issue presented by Defendants here is whether Wargotz has sufficiently pled that he is a "plan participant."

ERISA defines a participant, in relevant part, as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . or

whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). To qualify as a participant, Plaintiff, as a former employee, must either (A) reasonably expect to return to "covered employment," or (B) "have a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (citations and internal quotations omitted). After making this initial showing under the participant definition, Plaintiff then must show that he either is currently eligible under the severance plan or, if relying on the "may become eligible" language, that he has "a colorable claim that (1) he . . . will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Id.* at 117-18.

First, Plaintiff, as a former NetJets employee, does not set forth sufficiently in his Complaint a colorable claim to vested benefits. Wargotz contends that he has a "colorable claim" because he met the Plan's eligibility requirements. (Pl.'s Opp. Br. 4-5.) Specifically, Wargotz contends that he has a colorable claim to "at least receive a copy of the [p]lan" because he was an "eligible employee" and when Defendants terminated him, "other employees were allowed to resign and receive severance under the [p]lan." Pl.'s Reply Br. at 3. Plaintiff's assertion, however, is belied by the terms of the Plan. Under the Plan, to be eligible for the severance program, employees were required to apply between May 11, 2009 and June 12, 2009. (SPD, Defs.' Moving Br. Ex. 1 at 5.) Wargotz did not do so; therefore, he was not an "eligible employee." While he alleges in his complaint that he was informed of the severance program in April 2009, the Complaint does not plead that Wargotz ever requested Plan documentation or took any other steps to investigate his eligibility during the aforementioned period. As such, the Complaint does not put forth a colorable claim nor does it sufficiently allege that Wargotz will prevail in a suit for benefits.

In anticipation of this point, Wargotz baldly asserts that he should be excused from meeting the administrative plan requirements because "it would have been futile for [him] to do so." (Compl. ¶ 14; Pl.'s Opp. Br. 4-5.) This sense of futility allegedly stemmed from Plaintiff's April 2009 conversation with the CEO of NetJets, in which Wargotz was told that he would not be eligible for the voluntary layoff. (Compl. ¶ 12.) While Plaintiff's claim of futility in this context has some facial appeal, it ultimately falls flat.

Plaintiff's futility assertion appears to rest on a comparison to *Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244 (3d Cir. 2002), a case which actually cuts against the strength of his argument. The Third Circuit in *Harrow* held that a plaintiff who both applied for benefits and was denied could be excused from exhausting administrative remedies under ERISA if it would be futile to do so. 279 F.3d at 249-50. After rendering this holding, the Third Circuit held that the futility exception did not apply in the Harrows' case, since they took no action after an initial phone call to the

benefits provider to determine whether they qualified for benefits. *Id.* at 252 ("More importantly, the Harrows took no action after the initial phone call to an unidentified person to press their request. Under this set of facts, the exhaustion of remedies requirement demands more."). Likewise, here Plaintiff made no attempt to verify his eligibility for the voluntary severance plan. Instead, Wargotz simply asserts that he was told by his supervisor that he was ineligible. Wargotz's subsequent failure to ascertain his eligibility or seek further information about the Plan undermines, and indeed, vitiates his futility argument in light of *Harrow*.

Finally, Plaintiff also argues that he has a colorable claim and thus is a participant because "[p]lan administrators may not arbitrarily deny claims for benefits." (Pl.'s Opp. Br. at 5-6; Compl. ¶ 23). As noted above, Plaintiff never applied for the severance program; therefore, it is unclear how such benefits were arbitrarily denied. The mere invocation of the term "arbitrary denial" is not sufficient to salvage Plaintiff's "colorable claim" argument. Plaintiff must do more than invoke certain statutory language to survive a motion to dismiss. Indeed, Plaintiff's complaint must set forth factual allegations sufficient to raise a plaintiff's right to relief above a speculative level, *see id.* at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009). Plaintiff has failed to do so here. Accordingly, for the aforementioned reasons, Plaintiff has not sufficiently alleged that he is a "plan participant"; therefore, Count One must be dismissed as to Defendants NetJets, Inc., NJ Executive Services, Inc., and Administrative Committee of NetJets Inc.

       2.       *Information Within the Purview of ERISA's Disclosure Requirements*

Even assuming that Wargotz could be deemed a plan participant under Section 502(c)(1)(B), he must next set forth an entitlement to the documents sought in his Complaint. Wargotz requests a wide range of documents, including NetJets' severance plans and policies, as well as the "summary plan description, all participant communications, and Board of Directors Minutes and Exhibits relating to recent voluntary staff reduction program (and each other similar reduction, RIF, layoff program occurring during the past 12 months)."

Section 502(c)(1)(B) does not specify the precise documents that an ERISA plan administrator must provide on demand; rather, this provision imposes liability for an administrator's violation of disclosure requirements found in other sections. Instead, it appears to the Court that Section 1024(b)(4) governs Plaintiff's request.[4] 29 U.S.C. § 1024(b)(4) (requiring disclosure of "updated summary[] plan description, and the latest

---

[4] Plaintiff does not specify which provision of ERISA governs here; however, after review of the statute, Section 1024(b)(4) appears to be the most logical choice.

annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.").

The documents Plaintiff seeks, aside from the already-provided summary plan description, do not fall into any of the listed categories. In assessing which documents fall with the purview of Section 1024, courts have looked to whether the requested information will help the requestor determine his or her eligibility for benefits or rights under the plan in question. *See Maiuro v. Fed. Express Corp.*, 843 F. Supp. 935, 942 (D.N.J. 1994). Communications between Defendants and other participants, as well as board minutes pertaining to the voluntary staff reduction program generally, appear to have no bearing on Plaintiff's individual determination of his eligibility under the severance plan. As such, Wargotz is not entitled to these materials under Section 502(c). To the extent that other summary plan descriptions exist with regard to this Early Out program, Wargotz would be entitled to them but not to the other documents he requests.

    3. *"Plan Administrator"*

Defendants NetJets, Inc. and NJ Executive Services, Inc. contend that they are not "plan administators" and as such, cannot be held liable under Section 502(c)(1)(B). The Court agrees. The disclosure provision in 29 U.S.C. § 1132(c), by its terms, applies to plan administrators. A plan administrator is, in relevant part, either expressly designated in the plan documents or is the plan sponsor "if an administrator is not so designated." § 1002(16)(A)(i)-(ii). Here, the plan indicates that the Administrative Committee of NetJets, Inc., is the administrator. (SPD, Defs.' Moving Br., Ex. 1, at 4, 16.)

Plaintiff invites the Court to identify NetJets, Inc. and NJ Executive Services, Inc. as "de facto" administrators but cites to no binding precedent allowing this Court to do so. In fact, this Court is inclined to agree with another court in this district, which refused to recognize a "de facto" administrator since doing so "would require the Court to ignore the statutory language that imposes a duty on the plan's 'administrator' alone." *Campo v. Oxford Health Plans, Inc.*, Civ. No. 06-4332, 2007 WL 1827220, at *5 (D.N.J. Jun. 26, 2007) (citing *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir.1993)). Accordingly, the Court holds that Defendants NetJets, Inc. and NJ Executive Services, Inc. are not "plan administrators," and the claim against them must be dismissed on this basis.[5]

---

[5] Having determined that this complaint warrants dismissal on multiple bases under Rule 12(b)(6), the Court need not address Defendants' other argument for dismissal, improper venue.

7

**III.     CONCLUSION**

For the foregoing reasons, Plaintiff's motion to amend his complaint is **GRANTED**.  Following consideration of the parties' briefing as it pertained to this amended complaint, Defendants NetJets, Inc., NJ Executive Services, Inc. and Administrative Committee of NetJets, Inc.'s motion to dismiss is **GRANTED**.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**